UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TRAVELERS CASUALTY INSURANCE
COMPANY OF AMERICA,

      Plaintiff,

      v.                                                          Case No. 23-C-1631

NORTHBROOK CROSSING CONDOMINIUM
OWNER'S ASSOCIATION, INC.,

      Defendant.

---

## DECISION AND ORDER

---

Plaintiff Travelers Casualty Insurance Company of America brought this declaratory judgment action against its insured, Defendant Northbrook Crossing Condominium Owner's Association, Inc. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1). This matter comes before the court on the parties' cross-motions for judgment on the pleadings.

## LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to seek judgment on the pleadings after the pleadings have been closed. *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Courts apply the same standard in deciding a motion for judgment on the pleadings as they do in deciding a motion to dismiss. *Landmark Am. Ins. Co. v. Hilger*, 838 F.3d 821, 824 (7th Cir. 2016). The facts are viewed in the light most favorable to the non-movant. *Id.* To survive a motion to dismiss or for judgment on the pleadings, the challenged pleading must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)). Under the incorporation-by-reference doctrine, "a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williams v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

## ALLEGATIONS CONTAINED IN THE PLEADINGS

Travelers issued to Northbrook a "Condominium Pac" insurance policy, effective from November 1, 2020, to November 1, 2021. The policy insured Northbrook's interest in seven condominium buildings located at 4721 Everbreeze Circle in Appleton, Wisconsin, against the risks of direct physical loss of or damage to covered property. The policy states:

> We will not pay more for loss or damage on a replacement cost basis than the least of Paragraphs (i), (ii), or (iii) subject to Paragraph (d) below:
>
> (i) The Limit of Insurance applicable to the lost or damaged property,
>
> (ii) The cost to replace the lost or damaged property with another property
>
>     (a) Of comparable material and quality, and
>
>     (b) Used for the same purpose; or
>
> (iii) The amount actually spent that is necessary to repair or replace the lost or damaged property.

Dkt. No. 1-1 at 45. The policy also contains an appraisal provision, which provides:

> **Appraisal**
>
> If we and you disagree on the value of the property, the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the amount of Net Income and operating expense or the amount of loss. If they fail to agree, they will submit their differences to an umpire. A decision agreed to by any two will be binding. Each party will:

2

> a. Pay its chosen appraiser; and
> b. Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

*Id.* at 43.

On September 8, 2021, Northbrook notified Travelers that the roofs of all seven condominium buildings had been damaged by hail on September 7, 2021. Based on its investigation of loss, Travelers observed hail damage on all of the roofs and estimated the full roof replacement cost value for all seven buildings at $375,197.82. Travelers paid Northbrook $198,937.80, which was the $375,197.82 replacement cost value less $175,260.02 for depreciation and $1,000 for the policy deductible. Travelers would pay to Northbrook the depreciation amount upon replacement of the roofs.

Northbrook replaced the roofs on the buildings and submitted a final invoice to Travelers in the amount of $594,608.43. Upon review of the information Northbrook submitted in connection with the roof replacement work performed and using the Xactimate estimating software, Travelers increased the replacement cost value to $378,432.72. Travelers issued supplemental payments to Northbrook totaling $178,494.92. It also issued payment to Northbrook for $5,048.42 to cover building code upgrade costs Northbrook incurred in connection with the work.

On January 20, 2023, Josh Hansen, on behalf of Northbrook, made a written demand for appraisal. Northbrook selected Don Lathrop as its appraiser, Travelers selected Ray Pawlak as its appraiser, and the appraisers selected John Ortenblad as the umpire. During the course of the appraisal, Travelers requested that Northbrook produce the original contract between Northbrook and Family First Construction, the contractor for the work; work orders; invoices; copies of all checks or credit card statements and/or verifiable receipts showing the costs incurred for materials;

and copies of sub-contractor proposals and contracts. On August 10, 2023, Northbrook submitted to Travelers the contract it entered into with Family First Construction. The contract contains the following provisions:

> [Northbrook] board understands that this document is a CONTRACT and NOT A PROPOSAL, that no estimate will be provided and that aside from upgrades, a summary of the work to be performed, a description of materials to be used or a list of standard features included, the total contract price, or a description of the basis on which the price will be calculated, is embodied in the Xactimate estimate provided by Owner's insurance carrier and that this amount will constitute **the scope of work to be performed and the Price for the work**.
>
> **Repairs in exchange for Insurance Proceeds**
>
> Owner authorizes **Family First Construction & Roofing** ("Contractor") to conduct an initial inspection of Owner's property; research and engage a public adjusting firm, and if necessary, counsel for Client in an effort to obtain insurance proceeds from Owner's insurance company for the repair of Owner's property. Owner agrees to provide Contractor with all insurance information including claim number and insurance loss data information provided to Owner by insurance company, which may assist Contractor, Public Adjuster and Counsel in obtaining funds in which to repair the Property.
>
> In the event Owner's insurance company approves repairs for an amount acceptable to Contractor, Owner agrees to employ Contractor to perform all such work approved by Owner's insurance company for the price stated by Owner's insurance company for such work.
>
> Otherwise, Owner is only obligated to pay Contractor: (a) the amount authorized by Owner's insurance company; (b) any deductible required by Owner insurance company.
>
> **Payment:** First Insurance draft, or equal amount, is due prior to scheduling of job. Additional funds and supplements are due upon receipt from insurance company.

Dkt. No. 1-4 at 2.

On December 5, 2023, Travelers commenced this action asserting two claims for declaratory judgment. First, Travelers contends that, under Northbrook's contract with Family First Construction, the total price for the work is the amount embodied in the Xactimate estimate provided by Travelers to Northbrook, or $378,432.72. Travelers seeks a declaratory judgment that

Northbrook is not entitled to any additional proceeds for the work, that Travelers has satisfied its policy obligations to Northbrook, and that the appraisal is moot. Alternatively, in the event the dispute is returned to appraisal for resolution, Travelers requests a declaratory judgment that Northbrook is required to produce all the records associated with the work, including but not limited to work orders, invoices, copies of all checks or credit card statements and/or verifiable receipts showing the costs incurred for materials, and copies of sub-contractor proposals and contracts. Travelers asserts that, to the extent Northbrook is not able to acquire any or all of these records, Travelers should be granted leave to subpoena Family First Construction and any other relevant party for the records before the appraisal continues so that the appraisal panel can have the benefit of the information regarding the actual costs incurred for the work. Northbrook subsequently filed counterclaims for breach of contract, bad faith, and statutory interest.

## ANALYSIS

Travelers' first claim for declaratory relief seeks on order concluding that the appraisal process is moot and that Travelers has satisfied its policy obligations to Northbrook. Under Wisconsin law, insurance policies are to be applied as written unless their terms are ambiguous. *See, e.g.*, *Plastics Eng'g Co. v. Liberty Mut. Ins. Co.*, 2009 WI 13, ¶ 27, 315 Wis. 2d 566, 759 N.W.2d 613 ("The contract's words are to be given their common and ordinary meaning, and when the policy language is plain and unambiguous, we enforce the contract as written and without resorting to the rules of construction or principles from the case law." (citation omitted)).

Travelers asserts that Northbrook's recovery under the policy is limited to what Travelers has already paid. Relying on Northbrook's contract with Family First Construction, Travelers contends that the price for the work was the amount "embodied in the xactimate estimate provided by Owner's insurance carrier." Dkt. No. 1-4 at 2. Travelers argues that its Xactimate estimate

5

was $378,432.72, which it paid to Northbrook. It maintains that, because the amount of loss was set by Northbrook's contract with Family First Construction, there is no disagreement on the amount of loss and no need for an appraisal. Citing *Tower Hill Prime Insurance Company v. SFR Services, LLC*, No. 2020-CA-006212, 2023 WL 3449609 (Fla. Cir. Ct. Apr. 21, 2023), Travelers asserts that there is no need for the appraisal process when the amount of the loss has been set by contract. But *Tower Hill* does not stand for this proposition; instead, it supports the proposition that the appraisal process may be vacated when a party intentionally misrepresents or conceals material facts during the appraisal process.

The parties' dispute in this case is a factual one over the means and cost of correcting the damage to the condominium buildings. Although Travelers asserts that the cost of repairs is limited to the Xactimate amount of $378,432.72, Northbrook maintains that the cost of repairs is $594,608.43, which is the amount Northbrook actually owes. Under the terms of the policy, disputes over the amount of loss are to be raised and resolved through the appraisal process when either party so demands. *See Farmers Auto Ins. Ass'n v. Union Pac. Ry. Co.*, 2009 WI 73, ¶ 43, 319 Wis. 2d 52, 768 N.W.2d 596 (noting that appraisals "promote finality, are time and cost-efficient, and place a difficult factual question—the replacement value of an item—into the hands of those best-equipped to answer that question"). In other words, any disputes regarding the valuation of the costs of repair should be determined through the appraisal process.

Travelers asserts that, in the event the court concludes that the matter should be returned to appraisal, it has the right to all records associated with the repair work. In particular, Travelers seeks declaratory judgment that Northbrook must produce "all records associated with the Work" and, to the extent that Northbrook "is not able to acquire any or all of these records, that Travelers be granted leave to subpoena Family First Construction and any other relevant party for the records

6

before appraisal continues." Compl. ¶ 38, Dkt. No. 1. But the court has found no authority to support Travelers' proposition that the court can compel discovery in aid of an appraisal. The merits of the parties' disputes, including whether the parties have submitted sufficient documentation to substantiate their respective positions, should be left to the appraisers. Whether this information would be later available to Travelers through the discovery process, should the case continue, is a matter not before the court at this time.

## CONCLUSION

For these reasons, Northbrook's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED** and Travelers' motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**. The parties are directed to submit their disputes in accordance with the appraisal process. The case is stayed and administratively closed pending the completion of the appraisal process. Northbrook must notify the court of the completion of the appraisal process within 10 days of its completion.

**SO ORDERED** at Green Bay, Wisconsin this 1st day of May, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge