UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**TRAVELERS CASUALTY INSURANCE
COMPANY OF AMERICA,**

        **Plaintiff,**

        v.                               Case No. 23-C-1631

**NORTHBROOK CROSSING CONDOMINIUM
OWNER'S ASSOCIATION, INC.,**

        **Defendant.**

---

## DECISION AND ORDER

---

This insurance dispute is over the cost incurred for the repair of condominium roofs damaged by hail. Plaintiff Travelers Casualty Insurance Company of America brought this declaratory judgment action against its insured, Defendant Northbrook Crossing Condominium Owner's Association, Inc., seeking a declaration that it has fulfilled its obligations under its policy (Count I) or, alternatively, that it was entitled to the documentation showing the work Northbrook's contractor had performed and the cost therefor (Count II). Northbrook denied that Travelers had met its obligations or that it was entitled to the information it sought, and counterclaimed for breach, bad faith, and statutory interest. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1). The case is before the court on Travelers' motion for summary judgment and Northbrook's motion for partial summary judgment on Northbrook's counterclaims. For the reasons that follow, Travelers' motion will be granted and Northbrook's motion will be denied. The court having previously granted Travelers' alternative claim for declaratory relief (Count II), its remaining claim for declaratory relief (Count I) is denied as moot.

## BACKGROUND

Travelers originally brought this declaratory judgment action against its insured, Northbrook seeking a determination that its insured was not entitled to additional proceeds under Travelers' policy for damage to the roofs of seven of Northbrook's buildings caused by a September 7, 2021, hailstorm. Travelers alleged that it had paid Northbrook the replacement cost value of $378,432.72 using the Xactimate estimating software, and an additional $5,048.42 to cover building code upgrade costs Northbrook incurred in connection with the work. Northbrook claimed, however, that the roofs had been replaced, and that it was entitled to a total of $594,608.43 based on the final invoice of Family First Construction & Roofing, the contractor it had hired to perform the work. When Travelers failed to pay the amount of the invoice, Northbrook invoked the appraisal provision of the policy under which disagreements as to the value of property or amount of a loss are submitted to two appraisers selected by the parties, who then select an umpire. A decision by any two is considered binding. Dkt. No. 1 at ¶ 14.

Under the terms of its contract with Northbrook, Family First agreed that it would perform the work for the price "embodied in the Xactimate estimate provided by [Northbrook's] insurance carrier and that this amount will constitute the scope of work to be performed and the Price for the work." *Id.* ¶ 24. Travelers alleged that under the terms of the Northbrook's contract with Family First, "the total contract price for the Work was $378,432.72—the amount embodied in the Xactimate estimate provided by Travelers to Northbrook Crossing." *Id.* ¶ 25. Since it has already paid this amount, Travelers' claimed in Count I of its complaint that it was entitled to a declaration that it has fulfilled its obligations to Northbrook under its policy. *Id.* ¶ 31.

Alternatively, Travelers sought a declaration in Count II directing Northbrook to "produce all the records associated with the Work, including but not limited to work orders, invoices, copies of all checks or credit card statements and/or verifiable receipts showing the costs incurred for materials, and copies of sub-contractor proposals and contracts." *Id.* ¶ 38. To the extent

2

Northbrook was unable to acquire the requested records, Travelers asked that it be granted leave to subpoena Family First and any other relevant property for the records before the appraisal panel issued its decision so that the panel would have the benefit of the information showing the actual costs of the work. *Id.*

In its answer, Northbrook denied that Travelers had fulfilled its obligations under its policy, asserting that it was entitled to the full amount of the invoice Family First had submitted. Northbrook further alleged in its counterclaim that Travelers was in breach and in bad faith in failing to proceed with the appraisal process set out in its policy to determine the amount of the disputed loss. Dkt. No. 6. As a result, Northbrook claimed it was entitled to not only the loss amount under the policy but also attorneys' fees, costs, punitive damages, and statutory interest. *Id.* at 8.

Travelers then moved for judgment on the pleadings, arguing that under Northbrook's contract with Family First, its estimate established the price for which Family First agreed to perform the work, and alternatively, requesting leave to subpoena the records showing the work performed by Family First and its cost. Dkt. No. 12. Northbrook opposed Travelers' motion and filed its own order to compel Travelers to proceed with the appraisal process. Dkt. No. 13. The court initially denied Travelers' motion for judgment on the pleadings in full and directed it to proceed with the appraisal process. Dkt. No. 22. On reconsideration, however, the court granted Travelers' alternative request that it be allowed to subpoena Family First for records documenting the actual cost of the work and materials it had performed or hired other contractors to perform to complete the replacement of the roofs of Northbrook's buildings and stayed the appraisal process pending the production. Dkt. No. 27. In so ruling, the court noted that "[t]o rule otherwise would open the door to insurance fraud or collusion." *Id.* at 5. The court then stayed the appraisal process pending Family First's response to Travelers' subpoena. *Id.* at 6.

3

On October 11, 2024, Travelers moved for reconsideration of the court's order directing the parties to complete the appraisal process. Dkt. No. 28. In support of its motion, Travelers noted that it had learned that Family First had completed the work of replacing the roofs for $302,442.11 and that Northbrook had paid Family First $360,252.46 out of the $379,246.24 that Travelers had by that time already paid Northbrook. Travelers assumed that the additional amount paid to Family First represented its overhead and profit, which still left Northbrook with almost $19,000 over and above what it paid Family First for the work. Based on this evidence, Travelers argued that Family First's final invoice for $594,608.43 was "totally bogus" and there was no need to complete the appraisal process since it had already paid Northbrook more than it cost to replace the damaged roofs. *Id.* at 5. Northbrook opposed Travelers' motion on two grounds. First, Northbrook argued that the documents on which Travelers relied were not properly part of the record for purposes of reconsidering the motion for judgment on the pleadings and, second, there was still a dispute as to the amount of the loss given the need to take overhead and profit margins into consideration. Dkt. No. 29 at 3–4.

Citing the Wisconsin Court of Appeals' decision in *Badgerland Restoration & Remodeling, Inc. v. Federated Mutual Insurance Company*, 2024 WI App 36, 412 Wis. 2d 806, 8 N.W.3d 877, the court agreed with Northbrook and denied Travelers' motion. Dkt. No. 41. At the same time, the court noted that "this does not mean that Travelers has no remedy should the appraisal process result in an award that simply and without explanation adopts the amount invoiced by Family First. Just as Northbrook's contract with Family First did not give Travelers a blank check to determine the amount of the loss, the same contract does not give Family First a blank check to determine Travelers' payment." *Id.* at 8.

On May 13, 2025, a two-person majority of the appraisal panel issued their decision finding the full replacement cost of the work to be $490,339.22, plus $6,441.98 for building code upgrades.

4

The $490,339.22 award includes $38,346.26 for gutters which have not been repaired or replaced. Northbrook immediately moved to confirm the award and for summary judgment on its claim that Travelers had breached its policy by failing to pay the amount of the loss determined by the appraisers. Dkt. No. 43. Travelers opposed Northbrook's motion and moved for summary judgment in its favor on all three of Northbrook's claims against it, arguing that it had already paid more than what it cost Northbrook to replace the roofs of its seven buildings. Dkt. No. 50.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and make all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Northbrook claims that Travelers breached the policy by failing to pay the $490,339.22 awarded by the appraisal panel as the replacement cost for the work performed by Family First. Northbrook argues that under the plain terms of the policy, "a decision agreed to by any two [of

5

the two appraisers and the umpire] will be binding." Dkt. No. 1-1 at 27. "An appraisal may be set aside only upon the showing of fraud, bad faith, a material mistake, or a lack of understanding or completion of the contractually assigned task." *Farmers Auto. Ins. Ass'n v. Union Pacific Ry. Co.*, 2009 WI 73, ¶ 44, 319 Wis. 2d 52, 768 N.W.2d 596. Because Travelers is unable to make such a showing here, Northbrook contends the award is conclusive and Travelers is in breach for failing to pay it.

Travelers, on the other hand, contends that in this case its liability under the policy is limited to the lesser of the appraisal panel's award or the actual cost to repair or replace the damaged property. Since the actual cost of replacement was less than the panel's award, Travelers argues that the validity of the award is irrelevant. In the alternative, Travelers argues that the award should be set aside as the product of material mistake, a lack of understanding of the assigned task, and possibly bad faith.

The parties agree that Wisconsin law controls. Under Wisconsin law, insurance policies "are construed to give effect to the intent of the parties, expressed in the language of the policy itself, which [the court] interpret[s] as a reasonable person in the position of the insured would understand it." *Danbeck v. Am. Family Mut. Ins. Co.*, 2001 WI 91, 245 Wis. 2d 186, 629 N.W.2d 150. "The words of an insurance policy are given their common and ordinary meaning." *Id.* (citing *Henderson v. State Farm Mut. Auto. Ins. Co.*, 59 Wis. 2d 451, 457–59, 208 N.W.2d 423 (1973)). Where the language of the policy is plain and unambiguous, it is enforced as written, without resort to rules of construction or principles in case law. *Hull v. State Farm Mut. Auto. Ins. Co.*, 222 Wis. 2d 627, 637, 586 N.W.2d 863 (1998). "This is to avoid rewriting the contract by construction and imposing contract obligations that the parties did not undertake." *Danbeck*, 245 Wis. 2d 186, ¶ 10 (citing *Gonzalez v. City of Franklin*, 137 Wis. 2d 109, 122, 403 N.W.2d 747 (1987)). "Contract language is considered ambiguous if it is susceptible to more than one reasonable interpretation."

6

*Id.* (citing *Donaldson v. Urban Land Interests, Inc.*, 211 Wis. 2d 224, 230–31, 564 N.W.2d 728 (1997)). "If the language is ambiguous, it is construed in favor of coverage." *Id.* (citing *Garriguenc v. Love*, 67 Wis. 2d 130, 135, 226 N.W.2d 414 (1975). Finally, "[i]n interpreting the policy, the court may consider the apparent object or purpose, the subject matter of the insurance, the situation of the parties and the circumstances surrounding the making of the contract." *Employers Health Ins. v. Gen. Cas. Co. of Wis.*, 161 Wis. 2d 937, 946, 469 N.W.2d 172 (1991).

Travelers' policy is an indemnity policy. This means that "in the event of loss and in the absence of any valid defenses, the insured is entitled to recover that amount which will place it in the same financial position it would have been in had no fire occurred." *Wis. Screw Co. v. Fireman's Fund Ins. Co.*, 193 F. Supp. 96, 101 (E.D. Wis. 1961). Travelers' argument is based upon the following provision of the policy:

> (c) We will not pay more for loss or damage on a replacement cost basis than the least of Paragraphs (i), (ii), or (iii) subject to Paragraph (d) below:
>
> (i) The Limit of Insurance applicable to the lost or damaged property,
>
> (ii) The cost to replace the lost or damaged property with another property
>
>     (a) Of comparable material and quality, and
>
>     (b) Used for the same purpose; or
>
> (iii) The amount actually spent that is necessary to repair or replace the lost or damaged property.

Dkt. No. 1-1 at 45. Because Northbrook only paid Family First $360,252.46 for the completed work, Travelers contends that is the amount it was required to pay. Yet, Travelers notes, it actually paid Northbrook almost $19,000 more than the amount Northbrook paid Family First, giving rise to the question of whether Travelers is entitled to a refund.

Although the parties agree that Wisconsin law applies, they have largely relied upon several cases that arose in Minnesota to support their arguments. Since Minnesota law governing

7

insurance policies is essentially the same as Wisconsin's, *see Cedar Bluff Townhome Condominium Association v. American Family Mutual Insurance Company*, 857 N.W.2d 290, 294 (Minn. 2014), and the provisions of the policies applied in those cases are the same or similar, the court also finds those cases persuasive.

In particular, the parties have cited the district court's decision in *Natureview Vista Twinhome Association v. Travelers Indemnity Company*, No. 22-cv-2027 (ECT/DJF), 2024 WL 1718040 (D. Minn. Apr. 22, 2024), which also involved claims for hail damage under a similar Travelers policy. In that case, as here, Travelers claimed that it had already paid its insured more than the actual cost of replacing the damaged property, even though the amount paid was less than the award of the appraisal panel. *Id.* at *4. The insured had paid its contractor roughly $1,000,000 for the required work, but the appraisers had awarded more than $1,564,000 for the replacement cost. *Id.* at *2–3. In response to Travelers' argument, the insured produced an invoice generated by its contractor stating that its total costs were identical to the award of the appraisal panel.

Applying the policy language set forth above, the court concluded that Travelers was not bound by the appraisal panel's award but owed only what its insured had actually paid for the work. The court explained:

> Natureview contends that it "has completed the repairs and therefore is entitled to judgment for the replacement cash value ('RCV') of the loss plus its permits incurred pursuant to the Award and the Policy." ECF No. 41 at 1. Not so. Because the appraisal award establishes the cost to replace described in paragraph (c)(ii), Natureview is entitled to "[t]he amount actually spent that is necessary to repair or replace the lost or damaged property," so long as that amount is less than or equal to the RCV amount awarded by the appraisal panel. ECF No. 48-1 at 62. In other words, Natureview must "repair and replace the property and expend an amount *in excess of the agreed cash value of the loss*." *Kolls v. Aetna Cas. & Sur. Co.*, 503 F.2d 569, 571 (8th Cir. 1974) (emphasis added); *see also* Jordan R. Plitt et. al, Couch on Insurance § 176:60 (3d ed. Nov. 2023 Update) ("Thus, it has been stated that, before replacement costs could be recovered, the insured must repair or replace the damaged structure and spend an amount greater than that recoverable under actual cash value."); *Estes v. State Farm Fire & Cas. Co.*, 358 N.W.2d 123, 124–25 (Minn.

8

Ct. App. 1984) (insured who repaired a roof for $13,000 was only entitled to $13,000, not the full RCV).

*Id.* at *4. As for the invoice issued by the insured's contractor, the court noted that it was "not itemized and describes no work performed." *Id.* at *5. The court further noted that "[t]he invoice expressly ties the amount sought to the appraisal award, calculating the remaining amount Natureview owed as the recoverable depreciation awarded by the appraisal panel." *Id.* Nor could the invoice be reasonably considered final since "it was issued months before the repairs were completed." *Id.* The court concluded that "[the contractor] has been more than fairly compensated for its work even after accounting for 10% profit and 10% overhead." *Id.*

The reasoning of the court in *Natureview* is persuasive. What an insured actually spends to replace or repair damaged property, once the work is done, is not an abstract question that requires the opinion of experts. It is a matter of factual history and is or should be easily determinable without the need for an appraisal. Thus, while the appraisal award is, absent fraud, bad faith, a material mistake, or a lack of understanding or completion of the contractually assigned task, binding on the parties as to (c)(ii) of the policy provision quoted above, it is not the method used to determine (c)(iii), which is "[t]he amount actually spent that is necessary to repair or replace the lost or damaged property." Under the plain terms of the policy, when the amount actually spent on the necessary repairs is less than the award of an appraisal panel, the insurer is only required to pay the lesser amount. That is what Travelers chose to do here.

The court reached essentially the same conclusion in *Maplebrook Estates Homeowner's Association, Inc. v. Hartford Fire Insurance Co.*, No. 21-cv-1532 (SRN/DJF), 2024 WL 869069 (D. Minn. Feb. 29, 2024). There, also, the insurer argued that it was not obligated to pay an outstanding balance on an invoice since no itemization was provided to show the claimed work had actually cost what the invoice charged. The policy in that case, as here, limited the insurer's

9

payment obligation "to the least of the insurance limit, the cost of replacement, and the amount actually spent." The court thus concluded that the insurer was "only liable to pay the lowest of 'the limit of liability, the replacement cost for equivalent construction and use, or the amount actually spent to repair the damage.'" *Id.* The remaining dispute, the court noted, was over "how much was actually spent on covered repairs, which was not considered by the appraisal panel." *Id.* Noting that the invoice contained "essentially no information about what work is being invoiced, saying only that it was for "[a]ll repair as outlined in the adjusters summary and appraisal award," and that "no witnesses could identify the specific work to which the final invoice corresponded," the court concluded that "there is insufficient evidence in the record before the Court to find for Maplebrook. No reasonable jury could find for Maplebrook in the absence of any testimony specifying what work was covered by the December 13, 2021 invoice." *Id.*

In so ruling, the courts in both *Natureview* and *Maplebrook* distinguished the facts of those cases from those of *Savanna Grove Coach Homeowners' Association v. Auto-Owners Insurance Company*, No. 19-cv-1513 (ECT/TNL), 2020 WL 468905 (D. Minn. Jan. 29, 2020), a case Northbrook heavily relies upon. In *Savanna Grove*, the insurer similarly sought to avoid paying the amount awarded in an appraisal process by claiming that the actual cost of replacement was far less than the panel awarded. As the court explained, the invoices submitted by the insured showed that "Savanna Grove actually incurred costs totaling $2,654,377.94, an amount $39,753.59 greater than the appraisal award of $2,614,624.35." *Id.* at *5. In granting summary judgment in favor of the insured in that case, the court concluded "Savanna Grove has submitted evidence establishing the costs it incurred to replace or repair its damaged property were greater than the replacement cost as determined by the appraisal, and Auto-Owners has not shown that genuine issues of material fact exist regarding Savanna Grove's claim." *Id.* at *8.

The evidence that was presented in *Savanna Grove* is missing in this case. Here, Travelers has produced evidence that shows that Family First completed that work for which Northbrook sought reimbursement for $302,442.11 and that Northbrook paid Family First $360,252.46 for that work. Dkt. No. 61 ¶ 53. This left almost $19,000 of the total that Travelers had paid. When asked at the hearing on the motions where that money had gone, counsel stated he did not know. The invoice issued by Family First simply lists the amount charged for each building, together with smaller amounts for dumpster rental, telehandler, two weeks project management, and a temporary toilet "per Family First Construction estimate." Dkt. No. 46-3. When Travelers tried to obtain the documentation showing the actual cost of the labor and materials used on the project, it was told Northbrook could not obtain it and, absent a subpoena, Family First refused to produce it. And when Travelers finally did obtain the information, it revealed that Travelers had already paid more than it cost Family First to perform the work it claimed was final.

Northbrook argues that it is still legally obligated to pay Family First the full amount of its invoice for more than $594,000, citing an April 15, 2025 letter it received from Family First's attorney. Dkt. No. 60-5. But that is not true. Under its contract with Northbrook, Family First agreed that it would perform "all such work approved by Owner's insurance company for the price stated by Owner's insurance company." Dkt. No. 1-4 at 2. Nothing in its contract with Family First suggests that Northbrook could be required to pay more than Travelers was required to pay under its policy. The court rejected this same argument in *Natureview*, stating:

> Natureview also argues that "[t]here is no genuine dispute that Natureview agreed to pay the entire RCV of the Award plus permits to Tyther in exchange for completing the repairs." ECF No. 54 at 6. But Tyther only agreed to "complete the replacement of damaged property for the scope and price provided on the insurance loss statement." ECF No. 51-1. It did not agree to perform the work for a specific price. And the contract expressly warrants that Natureview will be subject to no additional costs except for its insurance deductible. *Id.* Moreover, the contract is subject to Travelers' payment terms. *Id.* If a contract alone could satisfy paragraph

11

> (c)(iii), Natureview's contract with Tyther does not independently obligate
> Natureview to pay the RCV amount identified by the itemized appraisal award.

2024 WL 1718040, at *6. Northbrook seemingly agrees that its obligation to Family First is limited to what Travelers ultimately pays, as it has asked the court to order only the amount awarded by the appraisal panel, not the full amount of Family First's invoice which exceeds the award by more than $100,000. Indeed, were the court to rule otherwise, Travelers would be required to pay whatever amount a contractor put on its invoice, thereby opening the door to fraud and collusion. This cannot be the law.

Based on the foregoing, the court concludes that Travelers is entitled to summary judgment on Northbrook's claims for breach of contract, bad faith, and statutory interest. Even assuming the decision of the appraisal panel stands undisturbed, Travelers was required to pay no more than "the amount actually spent that is necessary to repair or replace the lost or damaged property." Dkt. No. 1-1 at 45. The undisputed facts are that Northbrook informed Travelers that damaged roofs were replaced and all of the work completed on October 12, 2022. Dkt. No. 61 ¶ 50. It is also undisputed that Travelers paid Northbrook more than $378,432.72 shortly thereafter, and that Northbrook has paid Family First only $360,252.46. Dkt. Nos. 1 at ¶ 12, 6 at ¶ 12 & 61 at ¶ 53. In response to Travelers' evidence that Family First completed the work for $302,442.11, Northbrook has produced nothing more than the Family First invoice for $594,608.43. For the reasons set forth above, however, Family First's unsupported invoice is not evidence from which a reasonable jury could find in favor of Northbrook.

It thus follows that Travelers is entitled to summary judgment on Northbrook's breach of contract claim. Although the parties agree that the gutters have not yet been replaced, Travelers cannot be found to have breached its contract in failing to pay for them since it was told by Northbrook all of the work was completed. It may be that Northbrook may seek to submit a new

12

claim for gutter replacement, assuming it has not forfeited its right to do so, but Travelers cannot be faulted for failing to pay additional amounts for the replacement of damaged property it was told was already replaced. And since Travelers has timely paid what it was required to pay, based on the information provided, Northbrook's bad faith and statutory interest claims must be dismissed as well.

## CONCLUSION

For the foregoing reasons, Travelers' motion for summary judgment on Northbrook's counterclaims for breach of contract, bad faith, and statutory interest (Dkt. No. 50) is **GRANTED**, and Northbrook's motion for partial summary judgment (Dkt. No. 42) is **DENIED**. Count II of Travelers' complaint for declaratory relief having been previously granted, its remaining claim for declaratory relief is denied as moot. The Clerk is directed to enter judgment in Travelers' favor dismissing all of Northbrook's counterclaims and dismissing the case.

**SO ORDERED** at Green Bay, Wisconsin this 5th day of December, 2025.

William C. Griesbach
United States District Judge